UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 05-95-DCR
CIVIL NO. 06-502-DCR

UNITED STATES OF AMERICA                                                          PLAINTIFF


VS:                  RECOMMENDED DISPOSITION OF § 2255 MOTION


BILLY ROY EARLE                                                                   DEFENDANT

\* \* \* \* \* \* \* \*

Defendant Billy R. Earle, proceeding *pro se*, filed the instant 28 U.S.C. § 2255 motion. *See* DE #26. The District Court, which sentenced Earle, referred the matter to the undersigned. Having fully considered the record, including Earle's motion and memo, the Government's motion to dismiss, and Defendant's response, the matter is ripe for decision. *See* DE## 26, 35, 36, & 40. For the reasons stated herein, the Court recommends that the District Court DENY Movant's request to vacate, set aside, or correct sentence.

**I. Background**

Earle worked as a mail carrier in Middlesboro, Kentucky, at the time of the charged offenses. He ultimately pled guilty to three counts, each alleging theft of controlled substances from the United States mail, in violation of 18 U.S.C. § 1709. *See* DE# 23 at 1 (hereinafter 2006 "Judgment"). Earle received concurrent fifteen-month sentences and a three-year term of supervised release. *See id.* at 2-3.

1

According to the underlying investigation report, veterans in the Middlesboro area had reported several "non-received" VA prescription medication packages in the summer of 2005. *See* DE# 26-3 Exhibit A at 2 (hereinafter "Investigation Report"). Agent Rick Ellison, with the VA Office of Investigations, advised U.S. Postal Inspector Scott Keller of suspected mail theft. A few months later, Keller informed Ellison that additional VA prescription medication packages had not been delivered. The report reflects approximately eleven such undelivered packages between June and September of 2005. Keller advised Ellison that all missing parcels were on Billy Earle's mail route. *See id.*

Keller and Ellison thus determined to prepare and plant two "test" packages for delivery by Earle. Each test package contained a VA pill bottle labeled "Hydrocodone 5 / Acetaminophen 500 MG Tab," and one of the test parcels had a transmitter. The parcels did not actually contain hydrocodone, but the acetaminophen tablets in both packages resembled the narcotic. The agents inserted the packages into the mail on September 27, 2005, and addressed the packages to two residences that had previously reported non-received medication.[1]  *See id.*

Earle started his mail route at approximately 10:20 a.m. The agents contacted the targeted residences after Earle completed each stop. Residents at both addresses confirmed that the mail had been received for the day, but that the mail did not include delivery of a VA prescription medication package. *See id.* at 2-3.

---

[1] The agents originally placed the test packages into the mail on September 26, 2005, but Earle did not report to work that day. Due to potentially low transmitter batteries, the agents replaced the original test package containing the transmitter. *See* Investigation Report at 2.

2

The investigators continued to monitor Earle's movements via the transmitter. The signal indicated that Earle had possession of the test package when he returned to the Middlesboro Post Office at approximately 5:00 p.m. Earle reportedly placed a brown bag in his vehicle and entered the post office. Shortly after Earle returned to his vehicle, the transmitter started to emit a rapid tone, indicating that the test package had been opened. Agents Keller and Ellison responded to Earle's vehicle and conducted a traffic stop. *See id*. at 3.

The agents provided identification, directed Earle to exit the vehicle, and secured the scene. Keller requested Earle's consent to search the vehicle. Earle agreed and signed a consent form. *See id*.; *see also* DE# 26-3 Exhibit B (Consent Form). The agents discovered that both test packages had been opened, although only one of the planted VA pill bottles had been unsealed. The unsealed bottle was empty, and Earle informed the agents that he had ingested the pills contained in that bottle. *See* Investigation Report at 3-4; *see also* DE# 26-2 ¶ 3 (hereinafter "Nov. 2006 Earle Affidavit").

The agents next escorted Earle to the Middlesboro Post Office and conducted an interview. The investigation report reflects that the agents advised Earle of his *Miranda* rights, and the record shows that Earle signed a written *Miranda* waiver. *See* DE# 26-3 Exhibit C (*Miranda* Waiver); *see also* Investigation Report at 4. Earle provided a handwritten confession at the end of the interview, stating:

> I hav[e been] taking several packages of mail from the VA Hospital. What I have taken is pain pills (hydrocodone). I do have a serious addiction to these pills and wish to get help. I have taken 7-9 packages over the last 3-4 months; plus 2 packets today (9-27-05)[.] [A]s far as the number of pills I have taken I don't know, I eat them like candy.

DE# 26-3 Exhibit D (Statement).

3

Earle reports that the interview lasted "over an hour." *See* DE# 26-1 § 2255 Motion at 20 (hereinafter "§ 2255 Motion"); *see also* Nov. 2006 Earle Affidavit ¶ 4 (characterizing interview as "about an hour and a half"). Earle maintains that he originally denied stealing any parcels besides the test packages, and he claims that Agent Ellison induced his later confession by "removing documents from an envelope" and asserting that "he had proof that Earle had taken the other packages." *See* § 2255 Motion at 19; *see also* Nov. 2006 Earle Affidavit ¶ 4. Movant contends that Ellison never allowed him to review the exhibited documents. *See* § 2255 Motion at 20. Earle also claims that he was impaired. In addition to the planted acetaminophen tablets, Movant reports that he consumed twelve lawfully prescribed hydrocodone pills while on his mail route on the date in question. *See id.* at 18-20; *see also* Nov. 2006 Earle Affidvait ¶ 2; DE# 40-2 ¶ 6 (hereinafter "Mar. 2007 Earle Affidavit ").

The federal grand jury in the Eastern District of Kentucky issued an eleven count indictment against Earle based on the suspected mail thefts. *See* DE# 1. The charged thefts did not include the two September 27 test packages. *See id.* The Court appointed Hon. Samuel B. Castle, Jr., to represent Earle. *See* DE# 5.

Earle visited Castle in January 2005. He related to counsel the alleged circumstances of the interrogation and reported that the Middlesboro Post Office had no record showing that it ever received and processed the stolen parcels, according to Earle's supervisor. *See* § 2255 Motion at 22; *see also* Nov. 2006 Earle Affidavit ¶¶ 5, 9. However, Movant maintains that Castle failed to investigate this information or interview any witnesses. *See*, *e.g*., § 2255 Motion at 31. Instead, Castle allegedly instructed Earle to conduct his own investigation and informed Earle that "he had no other choice but to plead guilty," due to the confession. *See id.* at 31, 33; *see also* Nov. 2006

Earle Affidavit ¶¶ 7, 9; Mar. 2007 Earle Affidavit ¶ 4. According to Earle, Castle explained that a motion to suppress would not succeed because the agents would "lie" and the "judge would believe them." *See* § 2255 Motion at 23; *see also* Nov. 2006 Earle Affidavit ¶ 8; Mar. 2007 Earle Affidavit ¶ 5. Furthermore, Castle purportedly indicated to Earle that "the judge in the case [Judge Reeves] was biased against counsel, and therefore, would also be biased against [Earle]." *See* § 2255 Motion at 33; *see also* Nov. 2006 Earle Affidavit ¶8.

Castle confirms that he and Earle discussed the merits of filing a motion to suppress, and he claims he advised Earle that "it would be very difficult to prove" impairment because Earle had effectively executed his mail route that day and had also drafted his own confession. *See* DE# 36-5 ¶ 3 (hereinafter "Castle Affidavit"). Castle also states that he warned Movant that the agents, if they testified at a hearing, certainly would not support Earle's allegations. *See id*. Thus, Castle recalls that he explained to Earle "the importance of cooperating and accepting responsibility if [Earle] does not have an adequate defense," and that "it would look better to the court and the United States if [Earle] did not file a suppression motion with little or no merit." *See id*. ¶ 4. Castle believed Earle understood this strategy and determined to cooperate. *See id*.

Castle also confirms a discussion concerning information provided by Earle's supervisor. Castle indicates that Earle elected to make no arrangements for Castle to meet the supervisor, a friend of Movant, but rather decided to accept responsibility and cooperate. *See id*. ¶ 5. Castle likewise admits to having a discussion regarding Judge Reeves, although he claims Earle prompted the conversation. Castle recalls stating that he had "only one negative encounter" with Judge

Reeves,[2] and that the judge is "tough on crime." *See id.* ¶¶ 1-2.  Castle also described Judge Reeves as one who "always followed the law" and would be open to probation, if appropriate. *See id.*

Earle only pled guilty to three counts of theft, though the indictment contained eleven such charges. *See* Judgment at 1.  Castle states that Earle denied some of the charges. *See* Castle Affidavit ¶ 6.  As such, Castle claims he provided a list reflecting all eleven counts to Earle and instructed Earle to identify the offenses that he did **not** commit.  Earle returned the document, having designated five charges.[3] *See id.*; *see also* Castle Affidavit Attachments.  Castle discussed the matter with the United States, and the Government agreed to dismiss all but three counts. *See* Castle Affidavit ¶ 6; *see also* Judgment at 1.

Earle, however, contends that the markings identified only those parcels that he "knew" were not on his mail route. *See* Mar. 2007 Earle Affidavit ¶ 7.  Movant now maintains that he did not steal any parcels besides the two test packages (which the indictment did not charge).

## II. Issues

Movant claims his guilty plea was invalid because counsel failed to provide reasonably competent advice. He contends that Castle exerted inappropriate pressure on Earle to plead guilty when counsel a) forced Earle to conduct his own investigation; b) insisted that Earle "had no other choice but to plead guilty," based on the confession; c) insisted that a suppression motion would fail, if only because the agents would "lie" and the "judge would believe them;" and d) indicated that the

---

[2] Castle explained that Judge Reeves appeared "aggravated" because of how he and the AUSA "handled" a Guideline issue in a prior case. *See* Castle Affidavit ¶ 2.

[3] Earle also allegedly provided a handwritten note to counsel, which identified four thefts Movant did not commit. Although containing one less count, the note and the list otherwise designated the same counts. *See* Castle Affidavit ¶ 6; *see also* Castle Affidavit Attachments.

6

judge would be biased. Moreover, Earle asserts that counsel provided ineffective advice and representation when Castle recommended a guilty plea before conducting an investigation or contesting Earle's confession.

The United States contends that Movant's negotiated collateral-attack waiver bars review in this matter. *See* DE# 21 ¶ 9 (hereinafter "Plea Agreement")("The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction . . . ."). Alternatively, the Government argues that Earle's plea was in fact valid, and that the § 2255 argument thus warrants no relief.

### III.  Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, the movant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721-22 (1993)). To prevail on a motion alleging non-constitutional error, the movant must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *See Watson*, 165 F.3d at 488 (citing *Hill v. United States*, 82 S.Ct. 468, 471 (1962)).

The Court additionally recognizes Earle's *pro se* status. *Pro se* petitions receive a comparatively lenient construction by the Court. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are

entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

## IV. Analysis

Earle asserts that his plea was invalid, premised on counsel's allegedly coercive tactics and inadequate representation. Based on the nature of these allegations, the Court refuses to enforce Earle's collateral-attack waiver as to these claims and will consider the merits. *See In re Acosta*, 480 F.3d 421, 422 n. 2 (6th Cir. 2007)(explaining "claims that a guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel . . . generally cannot be waived").[4]

The substantive analysis should begin at Earle's rearraignment, where the record completely contradicts Movant's central § 2255 allegations. At the plea proceeding, Earle acknowledged – under oath and before the District Court – that trial counsel provided satisfactory advice and representation. *See* DE# 33 at 10 (hereinafter "Rearraignment"). He also affirmed that no one "made any threats or in any way forced" him to enter into a plea agreement. *See id.* at 16. Both the United States and the District Court summarized the charges, and Earle expressly confirmed that he committed the offenses on or about the identified dates. *See id.* at 12-13, 25-27. Earle declared, as to the thefts alleged, "I took them [the pills]," which he knew were mailed controlled substances because he had "talked to" the mail customers and knew what the customers normally received. *See*

---

[4]

If Earle's allegations were patently baseless, the collateral-attack waiver could conceivably bar Movant's claims, even though the claims allege plea invalidity. *See In re Acosta*, 480 F.3d at 422 & n. 2 (indicating that waiver enforcement is proper if "the defendant *did not articulate a basis* for attacking the validity of his plea")(emphasis added); *Jones v. United States*, 120 Fed. Appx. 594, 596 (6th Cir. 2005)(enforcing waiver provision to bar ineffective assistance claim that attacked the "waiver itself" because the claim had "*no basis*" in the record)(emphasis added). However, the Court finds that Earle's allegations do at least "articulate a basis" to attack the guilty plea, and thus warrant plenary evaluation despite the waiver. *See In re Acosta*, 480 F.3d at 422.

8

*id.* at 26.  Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings.  *See Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977).  These declarations mirrored the verified Plea Agreement terms.  *See* Plea Agreement § 3.

Despite the record and its significance on collateral review, Earle now maintains that counsel pressured him into pleading guilty.  He specifically claims that Castle forced him to conduct his own investigation; insisted that he "had no other choice but to plead guilty" since he had confessed; insisted that a suppression motion would fail; and indicated that the judge would be biased.  Earle also alleges that Castle did not provide competent representation because counsel failed to conduct an investigation or contest Earle's confession before recommending a guilty plea.

If counsel's advice to plead guilty was not within "the range of competence demanded of attorneys in criminal cases," the law recognizes that the plea would be involuntary.  *See McMann v. Richardson*, 90 S.Ct. 1441, 1449 (1970); *Tollett v. Henderson*, 93 S.Ct. 1602, 1608 (1973).  The Supreme Court's seminal decision on ineffective assistance of counsel in *Strickland v. Washington*, 104 S.Ct. 2052 (1984) explicitly incorporated *McMann*.  *See id.* at 2063; *see also Hill v. Lockhart*, 106 S.Ct. 366, 369 (1985).

Based on *McMann*, *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness.  *See Strickland*, 104 S.Ct. at 2064.  This standard is "highly deferential," and there is a "strong presumption" in the analysis that counsel rendered adequate assistance.  *See id.* at 2065.  In addition to deficient representation, *Strickland* also requires a prejudice evaluation.  *See id.* at 2064.  In the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial." *See Hill*, 106 S.Ct. at 370; *see also Strickland*, 104 S.Ct. at 2068. A reasonable probability is one sufficient to undermine confidence in the outcome. *See Strickland*, 104 S.Ct. at 2068.

Earle plainly fails to establish ineffective assistance of counsel in this case. Movant confessed to stealing seven to nine packages from the mail, and "the conviction rate when a defendant confesses is extremely high." *See Carnail v. Bagley*, 2006 WL 1876546, at * 5 (N.D. Ohio July 3, 2006). Counsel cannot be faulted for urging Earle to cooperate and plead guilty based on the confession and the corroborating evidence. Because conviction was highly likely, Earle had far more to gain at sentencing if he timely decided to plead guilty and accept responsibility. Indeed, Earle received a two-point[5] reduction on his Guideline calculation and the United States dismissed eight of the eleven charged counts. *See* DE# 34 at 5-7 (hereinafter "Sentencing"); *see also* Judgment at 1. Counsel's advice in this matter reflects "sound trial strategy." *See Strickland*, 104 S.Ct. at 2065.

Movant's dual contentions – that counsel should have conducted an investigation and should have contested Earle's confession before recommending a guilty plea – have no merit. Earle erroneously believes that police misconduct and his own claimed impairment may have rendered his confession involuntary.[6] Earle contends that Agent Ellison induced the confession by

---

[5] Movant may have received an additional one-point reduction for acceptance of responsibility if he had not failed a drug test and thus violated his bond. *See* Sentencing at 5-7.

[6] Because the record conclusively shows that authorities provided *Miranda* warnings to Movant, Earle's confession would be inadmissible only if he involuntarily confessed. *See Dickerson v. United States*, 120 S.Ct. 2326, 2336 (2000)("The requirement that *Miranda* warnings be given does not, of course, dispense with the voluntariness inquiry."). In assessing voluntariness, the standard is whether "defendant's will was overborne," based on a totality of the circumstances.

misrepresenting to Earle that he had evidence proving the additional mail thefts. Movant also now claims he ingested excessive amounts of hydrocodone and acetaminophen prior to the interview. Earle faults counsel for not investigating these allegations, not interviewing the agents, and not thereafter moving to suppress the confession. However, Earle's allegations and arguments, even if proven, would not have warranted suppression.

In *Frazier v. Cupp*, 89 S.Ct. 1420 (1969), the Supreme Court refused to invalidate a confession based on police misrepresentation. *See id.* at 1425 (explaining police falsely informed the suspect that his coconspirator had confessed). The *Frazier* Court considered the misrepresentation "relevant," but "insufficient" to render an "otherwise voluntary confession inadmissible." *See id.* Following *Frazier*, "most courts" have held that "police lies about evidence, without more, do not render a confession involuntary." *See United States v. Rodgers*, 186 F.Supp.2d 971, 977 (E.D. Wis. 2002); *see also United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003)("Even misrepresentations by law enforcement . . . do not necessarily evidence coercive conduct."); *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998)("Although [the police officer] admitted to making false statements about fingerprint evidence found in [the victim's] home, such misrepresentations, without more, do not render an otherwise voluntary confession involuntary.").

Significantly, Earle raises no other allegations of police misconduct or coercion in this case, and the record plainly shows that authorities provided valid *Miranda* warnings. Under these circumstances, Agent Ellison's purported misrepresentations would not even arguably establish involuntariness or justify suppression. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994)("A defendant's will is not overborne simply because he is led to believe that the government's

---

*See id.* at 2331.

11

knowledge of his guilt is greater than it actually is."); *see also Dickerson*, 120 S.Ct. at 2336 ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was compelled despite the fact that law enforcement authorities adhered to the dictates of *Miranda* are rare."). Based on the facts alleged, Earle's misconduct argument would fail as a matter of law, thus negating the § 2255 theory.

The impairment issue fairs no better. "A suspect's intoxication or mental impairment does not make a confession involuntary unless some level of police coercion is present." *United States v. Mullikin*, 2006 WL 1675185, at *9 (E.D. Ky. June 16, 2006). The Supreme Court recognized in *Colorado v. Connelly*, 107 S.Ct. 515 (1986) that "coercive police activity is a necessary predicate" to involuntariness. *See id.* at 522. Thus, "a defendant's mental condition, by itself and apart from its relation to official coercion," cannot invalidate a confession as involuntary. *See id.* at 520. The condition is only "relevant" in assessing "an individual's susceptibility to police coercion." *See id.* at 520-21.

Here, the only possibly coercive police conduct was Agent Ellison's purported misrepresentations. However, even if Ellison "inflat[ed]" the evidence that he had against Earle, the "degree of improper coercion" from such conduct would be "slight." *See Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992)("Of the numerous varieties of police trickery, however, a lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary."). *Connelly* requires something more than the misrepresentations that occurred here to establish "coercive police activity." *See*, *e.g.*, *United States v. Palmer*, 203 F.3d 55, 61-62 (1st Cir. 2000)(finding an "intentional lie" by police interrogator did not constitute coercion under *Connelly*, where court assumed the defendant had a "weakened" mental condition due to drug withdrawal).

12

To the extent Movant must show both impairment *and* police coercion to succeed, Earle's argument, centered on impairment, fails.

The impairment issue also has glaring factual weaknesses because Earle's alleged impairment is not evident on the record. The record shows that Earle completed his mail route – a job which required the operation of a motor vehicle – just prior to the subject interview. *See* Nov. 2006 Earle Affidavit ¶¶ 3-4; Investigation Report at 3-4. Earle also executed multiple waivers and drafted the confession himself at the end of the interrogation. *See* DE# 26-3 Exhibits B, C, & D. These undisputed facts strongly tend to *disprove* impairment. As appointed counsel also warned, the investigating agents could not be expected to support Earle's allegations. *See* Castle Affidavit ¶ 3. The agents, who relied on the confession to secure Earle's arrest, would not testify that Movant was impaired.

The Court notes that the investigation report confirms only that Earle consumed a bottle of acetaminophen tablets. *See* Investigation Report at 4; *see also* Nov. 2006 Earle Affidavit ¶ 3. However, acetaminophen is a non-narcotic, and the actual amount of acetaminophen Earle consumed is unknown.[7] Earle claims he also took approximately twelve hydrocodone pills on the day of the interview, but that allegation would have been difficult to corroborate without witnesses or a contemporaneous drug test. Further, Movant presents no evidence of actual impairment, and his detailed recitation of the day in question would cut against a finding of lowered competency at the

---

[7] The report indicates that Earle opened and consumed the acetaminophen tablets in the test package *without* a transmitter, and the report fails to identify the quantity and strength of the acetaminophen tablets in that parcel. Earle offers nothing to suggest impairment via the acetaminophen.

time. On balance, Earle's job performance and participation in the investigation/interview indicate no legally significant impairment, despite limited and mostly unsubstantiated evidence of drug use.

As such, neither the police misconduct or impairment claims allege a sufficient basis for suppression, and are thus meritless. *See Kimmelman v. Morrison*, 106 S.Ct. 2574, 2583 (1986)(requiring defendant to show suppression issue is meritorious to establish prejudice in suppression context). As a result, counsel's failure to investigate these matters or pursue a motion to suppress was not objectively unreasonable or prejudicial. *See Strickland*, 104 S.Ct. at 2064, 2068; *Kimmelman*, 106 S.Ct. at 2583. Likewise, counsel provided competent representation when he advised Earle not to file a baseless suppression motion. Earle's arguments demonstrate no ineffective assistance of counsel relative to the suppression context. *See Kimmelman*, 106 S.Ct. at 2583.

Movant also complains that counsel should have interviewed Middlesboro Post Office employees who purportedly indicated to Earle that the particular office never processed the packages charged in the indictment. *See* § 2255 Motion at 22; *see also* Nov. 2006 Earle Affidavit ¶¶ 5, 9. Earle claims that he related this information and the identities of the "witnesses" to counsel, but counsel allegedly told Movant that he would have to conduct his own investigation. *See* Nov. 2006 Earle Affidavit ¶ 9; Mar. 2007 Earle Affidavit ¶ 3; § 2255 Motion at 32. Castle, on the other hand, explains that he elected not to interview any witnesses because Earle did not follow through on producing a friendly witness and instead agreed to plead guilty. *See* Castle Affidavit ¶ 5.

Counsel has a duty either to conduct a reasonable investigation or to make a reasonable decision rendering investigation unnecessary. *See Strickland*, 104 S.Ct. at 2066. The Court assesses a decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure

14

of deference to counsel's judgments." *See id.* Here, the Court believes counsel's decision not to interview the post office witnesses (or witness) was reasonable, considering the probative value of Earle's confession, the surrounding circumstances, the Government's corroborative investigation, Earle's corresponding determination to plead guilty, and the "heavy measure of deference" accorded to counsel's judgments. *See id.*

Irrespective of counsel's decision-making on this matter, Movant has failed to demonstrate prejudice. Earle identified only one actual witness,[8] and whether that witness may have had exculpatory information is pure speculation on this record. Earle provides no witness affidavits or any other corroborating documentation. *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989); *United States v. Vazquez-Garcia*, 211 Fed. Appx. 544, 546 (8th Cir. 2007); *Petsche v. Tafoya*, 146 Fed. Appx. 306, 311 (10th Cir. 2005). The Court cannot conclude that counsel prejudiced Movant by failing to interview post office employee(s) based only on Earle's bare allegation that his supervisor (or other unidentified witnesses) had limited exonerating information. *See D'Amario v. United States*, 403 F.Supp.2d 361, 372 (D.N.J. 2005).

Finally, Earle claims counsel pressured him into pleading guilty by indicating that the judge would be biased. *See* § 2255 Motion at 23. Castle confirms that he and Earle discussed Judge Reeves, and he recalls stating to Earle that he has had "one negative encounter"[9] with the judge and that the judge is tough on crime. *See* Castle Affidavit ¶¶ 1-2. Earle argues that Castle's affidavit substantiates his allegations. Based on Castle's own recollection of the discussion, Earle submits

---

[8] The one witnesses identified by Earle is Chris Arnett, the personnel supervisor at the Middlesboro Post Office. *See* Nov. 2006 Earle Affidavit ¶¶ 5, 9; *see also* § 2255 Motion at 22.

[9] *See* n.2, *supra*.

15

that he "could have easily believed that Judge Reeves would have been biased against him had he attempted to fight the charges . . . with an attorney who previously had bad encounters with Judge Reeves, and who Judge Reeves did not like." *See* DE# 40-1 at 6 (hereinafter "Earle Reply"). The Court disagrees. Judges are bound to be impartial, and Earle could not have reasonably believed that Judge Reeves would have violated that fundamental duty because of Movant's conversation with Castle. It further is nonsensical to think that Castle would accept appointments before a judge thinking he had no defense option but a guilty plea. This argument is baseless.

In sum, Earle's § 2255 motion fails to allege any errors warranting § 2255 relief. *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). The Court finds that Earle does not present a colorable ineffective assistance claim, and Earle voluntarily entered his guilty plea. *See McMann*, 90 S.Ct. at 1449.

## V. Evidentiary Hearing

Earle's application requests an evidentiary hearing. On this record, the Court finds that such relief is unnecessary. The reviewing court need not conduct a hearing if the allegations in the petition are inherently incredible, refuted by the record, or conclusory. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Here, no substantial factual conflict on the determinative issues exists, and the record conclusively demonstrates that Earle's § 2255 claims are meritless. *See Blanton*, 94 F.3d at 235. Thus, this matter warrants no additional evidentiary development by way of a hearing.

## VI. Certificate of Appealability

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires the

movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability). None of the issues presented by Earle crosses this threshold, for the reasons cited in the substantive analysis. The determination on the merits is not debatable in this case. Earle has not made a "substantial showing" as to any claimed denial of right, as shown by clear precedent applied to the dispositive facts. Therefore, the Court recommends that, in the § 2253 context, the District Court refuse to certify any issues for appeal.

## VII. Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court DENY, with prejudice, Earle's § 2255 motion, *see* DE# 26; and

2) should Earle make a motion under 28 U.S.C. § 2253, the District Court refuse a Certificate of Appealability as to all issues.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for

consideration, de novo, by the District Court.

This the 27th day of November, 2007.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge

G:\01-Clerk\2255\05-95,Earle,2255.wpd